UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ATLAS LINK INC.,
Plaintiff,

v. : No. 5:26-cv-0703

ANGEL CONDE,
Defendant.

# OPINION

**Motion for Default Judgment, ECF No. 18 – Granted in Part, Denied in Part**

**Joseph F. Leeson, Jr.**
**United States District Judge**

**August 24, 2026**

## I. INTRODUCTION

This case involves copyright and trademark infringement claims brought by a South Korean company that sells electronic devices that operate with a corresponding mobile application. Plaintiff Atlas Link, Inc.[1] filed the above-captioned action against Defendant Angel Conde. Conde has not responded to these proceedings; therefore, Atlas Link filed a Motion for Default Judgment seeking statutory damages, a permanent injunction, and attorneys' fees. For the reasons set forth below, the Motion is granted in part as to copyright infringement in Count I and the trademark infringement/false association claims in Counts II, IV, and V. The Motion is denied as to the false designation of origin claims in Counts II, IV, and V, as well as the trademark counterfeiting claim in Count III. These claims are dismissed without prejudice for failure to state a claim. Because the damages requested in the Motion for Default Judgment are

[1] At the time the instant action was initiated, the Plaintiff was Aloys. Inc., but the company has since changed its name to Atlas Link, Inc. *See* ECF Nos. 21-22. Accordingly, this Opinion refers to Plaintiff only as Atlas Link, Inc.

based on a dismissed count, Atlas Link will be afforded an opportunity to file an amended complaint and directed to renew its motion for default judgment.

## II. BACKGROUND

### A. Factual Allegations

Atlas Link manufactures and sells "multimedia devises such as satellite and media receivers" worldwide. *See* Compl. ¶ 10, ECF No. 1. The devices are used with the corresponding mobile applications titled "MYTVOnline+" and "MYTVOnline3." *Id.* "These applications are available for download through the Apple or Android store and are used exclusively with the streaming device that [Atlas Link] offers." *Id.* ¶ 13. Using this "proprietary software," consumers can connect applications and devices to a single platform. *Id.* ¶ 11. This software is accessible to consumers only after assenting to an end user license agreement via a private marketplace. *Id.* ¶ 12. Atlas Link's products are allegedly "popular among the consuming public, and the trademarks . . . are well recognized among consumers." *Id.* ¶ 16.

Atlas Link has copyrights under South Korean Law. *Id.* at ¶ 15. Additionally, Atlas Link has registered the trademarks that it uses in connection with the copyrighted works and "many of these trademarks are duly and properly registered . . . with the United States Patent and Trademark Office on the Principal Register." *Id.* ¶ 17. Atlas Link specifically pleaded six recorded trademarks. *Id.*

Atlas Link alleges that Conde unjustly profited "by making unauthorized copies" of Atlas Link's copyrighted material, "repackaging the software and selling it using identical MYTVONLINE marks." *Id.* ¶ 19. Conde allegedly benefited "by copying and modifying software that [Atlas Link] spent significant time and effort developing and perfecting while simultaneously benefitting from the goodwill that [Atlas Link] has built in [its trademarks] over

the last several years." *Id.* ¶ 20. Additionally, Conde "advertises, markets, copies, offers, and/or distributes purported [Atlas Link] software and components on online forums." *Id.* ¶ 21. On those forums, Conde holds himself out as "distributing genuine [Atlas Link] software. . ., however, the [Atlas Link] software and components distributed by [Conde] are actually unauthorized and infringing." *Id.*

On July 8, 2025, Atlas Link sent a cease-and-desist letter to Conde requesting that he stop infringing on Atlas Link's copyrights and trademarks. *Id.* ¶ 22. On or around July 14, 2025, Conde responded via email: "I agree to completely stop all mentioned in Letter" and "I have Not sold or Distributed any APKs[2] although some have asked." *Id.* ¶ 23. Atlas Link alleges that Conde's denial of any infringement is not correct. *Id.* ¶ 24.

On August 18, 2025, Atlas Link sent another letter to Conde requesting that he "provide an undertaking in which he agreed not to infringe on [Atlas Link's] intellectual property in the future." *Id.* ¶ 25. Conde did not respond. *Id.* ¶ 26. Atlas Link alleges that Conde "may be continuing to commit acts of copyright and trademark infringement against [Atlas Link]." *Id.*

**B. Procedural History**

On February 3, 2026, Atlas Link initiated the above-captioned action by filing a Complaint against Conde alleging violations of: (I) copyright infringement, 17 U.S.C. § 501, (II) trademark infringement, 15 U.S.C. § 1114, (III) trademark counterfeiting, 15 U.S.C. § 1114(1), (IV) trademark infringement, false designation of origin, and unfair competition, 15 U.S.C. § 1125(a), and (V) trademark infringement under Pennsylvania Common Law. *See* Compl. ¶¶ 32-66. Despite proper service of the Complaint, Conde failed to respond and default was entered against him. *See* ECF Nos. 14-15. On May 4, 2026, Atlas Link filed a Motion for Default

---

2 "APK" refers to Atlas Link Copyrighted Works.

Judgment, seeking statutory damages for trademark counterfeiting pursuant to the Lanham Act, a permanent injunction, and attorneys' fees. *See* Mot., ECF No. 18.

## III. LEGAL STANDARDS

### A. Default Judgment – Review of Applicable Law

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a properly served defendant when a default has been entered by the Clerk of Court. *See* Fed. R. Civ. P. 55(b)(2); *see also Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The Court considers three factors in determining whether to enter default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In considering these factors, the "court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions[,]" *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017), nor those related to damages, *see DirecTV Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005).

Because "a party in default does not admit mere conclusions of law[,]" the district court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action," before granting default judgment. *Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD*, 555 F. Supp. 2d 537, 541 (E.D. Pa. May 21, 2008) (citation omitted). In determining whether the plaintiff has stated a cause of action, the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

**B. Copyright Infringement - Review of Applicable Law**

"To establish a claim of copyright infringement, a plaintiff must show: '(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.'" *Tanksley v. Daniels*, 902 F.3d 165, 172-73 (3d Cir. 2018) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). To state a copyright infringement claim, the plaintiff must allege: "(1) which specific original works are the subject of the copyright claim; (2) ownership of the copyrights in those works; (3) registration of the works in question with the Copyright Office in accordance with 17 U.S.C. §§ 101, et seq.; and (4) by what acts the defendant infringed the copyright." *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, No. CV 20-613, 529 F. Supp. 3d 303, 2021 U.S. Dist. LEXIS 59945, 2021 WL 1174725, at *4 (D. Del. Mar. 29, 2021) (quoting *Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*, 125 F. Supp. 3d 497, 501 (D. Del. 2015)).

### C. Trademark Infringement, Unfair Competition - Review of Applicable Law

"The Lanham Act, [15 U.S.C. §§ 1051-1141n,] the core federal trademark statute, defines a trademark as follows: '[A]ny word, name, symbol, or device, or any combination thereof ' that a person uses 'to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods.'" *Jack Daniel's Props. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023) (quoting 15 U.S.C. §1127). To state a claim for trademark infringement,[3] a plaintiff must prove that "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services," *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 472 (3d Cir. 1994) (citing *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)), "or to cause mistake, or to deceive as to the . . . sponsorship, or approval of his or her goods [or] services," 15 U.S.C. § 1125(a)(1)(A). "The single most important factor in determining likelihood of confusion is mark similarity." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000). The trademark infringement sections of the Lanham Act "forbid use of words or marks in a way which is likely to cause confusion as to the origin, sponsorship, or approval of goods or services." *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 221 (3d Cir. 2005).

To state a claim for unfair competition or false association of a registered trademark, a plaintiff must allege:

> (1) it owns a valid, protectable mark; (2) the alleged infringer used the mark; (3) in commerce; (4) in connection with any goods or services; (5) without the complaining party's consent; and (6) the alleged infringer's use of that mark 'is

---

[3] "[T]he elements of common law trademark infringement under Pennsylvania and federal law are identical," except that state law does not require the goods to travel in interstate commerce. *Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778, 780 (3d Cir. 1986). The plaintiff bears the burden of proof." *A&H Sportswear, Inc.*, 237 F.3d at 210-11.

> likely to cause confusion . . . as to the affiliation, connection, or association of [the infringer] with [the trademark owner], or as to the origin, sponsorship, or approval of [the infringer's] goods, services, or commercial activities by [the trademark owner].

*Barefoot Architect, Inc. v. Bunge*, No. 2004-99, 2007 U.S. Dist. LEXIS 48092, at *9 (D.V.I. June 22, 2007) (quoting 15 U.S.C. § 1125(a)(1)(A)). *See also Guzman v. Telfair, Inc.*, No. 5:25-cv-02290, 2026 U.S. Dist. LEXIS 48560, at *7-8 (E.D. Pa. Mar. 10, 2026).

To state a false designation of origin "claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must allege:

> (1) that the defendant uses a false designation of origin; (2) that such use of a false designation of origin occurs in interstate commerce in connection with goods or services; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of the plaintiff's goods and services by another person; and (4) that the plaintiff has been or is likely to be damaged.

*Parker v. Google*, 242 F. App'x 833, 838 (3d Cir. 2007). Such claims "require some degree of falsity in the product." *Meenaxi Enter. v. Singh Trading Co.*, No. 23-2288, 2024 U.S. App. LEXIS 18964, at *8 n.15 (3d Cir. July 31, 2024).

**D. Trademark Counterfeiting - Review of Applicable Law**

Section 1114 of the Lanham Act "requires the plaintiff to show that the defendant (1) used a 'reproduction, counterfeit, copy, or colorable imitation' of a registered mark or its packaging. . . ; and (2) that its use is 'likely to cause confusion, or to cause mistake, or to deceive'." *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659, 671 (3d Cir. 1989) (quoting 15 U.S.C. § 1114(1)). "The terms 'copy,' 'simulate,' 'counterfeit' and 'imitate' have readily comprehensible ordinary meanings. They are used commonly to refer to items that resemble, but are not themselves, the original or genuine artifacts." *Id.* Under the first requirement, the

trademark owner "must establish that the products sold by the alleged infringer are not 'genuine.'" *Id.* (quoting *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

**E. Statutory Damages- Copyright Act - Review of Applicable Law**

The Copyright Act allows for statutory damages "in a sum of not less than $750 or more than $30,000"' per infringement, which "the court in its discretion may increase . . . to a sum of not more than $150,000, if the infringement was committed willfully. *See* 17 U.S.C. § 504(c)(1)-(2). "Courts have wide discretion in determining statutory damages." *Broad. Music, Inc. v. Crocodile Rock Corp.*, 634 F. App'x 884, 885 (3d Cir. 2015). Seven factors are considered for statutory damages:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-02662, 2009 WL 2147843, at *7 (D.N.J. July 15, 2009) (quoting *Phillip Morris USA, Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)).

**F. Statutory Damages- Trademark Counterfeiting - Review of Applicable Law**

The Lanham Act provides for statutory damages[4] of "not less than $1,000 or more than $200,000 per counterfeit mark per type of good or services sold, offered for sale, or distributed, as the court considers just; or if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods . . . ." 15 U.S.C. § 1117(c)(1)-

[4] The Lanham Act also allows a a plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action," 15 U.S.C. § 1117(a), but these are not requested by Atlas Link here.

(2). "[S]tatutory damages are limited to counterfeiting cases." L*aughing Smith, LLC v. PPNC, Inc.*, No. 1:23-CV-01285, 2024 U.S. Dist. LEXIS 169831, at *9 (M.D. Pa. Sep. 20, 2024) (denying the request for statutory damages because the plaintiff cited "no authority to support the awarding of statutory damages for ordinary trademark infringement under Sections 1117(b), (c), or any other provision"). "In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002).

## IV. ANALYSIS

### A. Default Judgment (*Chamberlain* Factors)

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)." *Deutsche Bank Nat. Tr. Co. v. Strunz*, No. 1:12-CV-01678, 2013 WL 122644, at *1 (M.D. Pa. Jan. 9, 2013). Likewise, the following analysis indicates that default judgment is here appropriate.

First, in a case involving trademark infringement, a plaintiff would be prejudiced if default is denied "as it would prevent [the plaintiff] from stopping the infringement." *Mission Critical Partners, LLC v. Mission Critical Talent Partners*, LLC, No. 4:25-CV-00961, 2026 U.S.

Dist. LEXIS 43827, at *1 (M.D. Pa. Mar. 4, 2026). In *Mission Critical Partners, LLC*, the plaintiff filed a claim for trademark infringement under the Lanham Act and Pennsylvania state law. *Id.* The defendant failed to respond to the litigation. *Id.* That court found that the first element of a default judgment was met because the plaintiff "would be prejudiced by its 'current inability to proceed with [its] action due to [the defendant's] failure to defend." *Id.* (concluding that the defendant's failure to respond prevents the plaintiff from recovering damages and from stopping the infringement).

Similarly here, the first factor is met because Atlas Link will be harmed if default judgment is not granted because it is unable to recover damages for its claims. Additionally, the intellectual property nature of the case demands that the mere continuation of use of Atlas Link's copyright and trademarks could lead to irreparable harm if Conde is not enjoined from that infringement. This element is met even if there is no evidence that Conde is continuing to use Atlas Link's intellectual property because irreparable harm *could* occur and the Complaint alleges that Conde may still be offending.

Second, if a defendant fails to respond to the litigation, a litigable defense has not been asserted. *Id.* at 2. Furthermore, this Court has reviewed the Complaint to determine which claims are supported by sufficient factual allegations, as will be discussed below, and notes that the infringing conduct occurred within the statute of limitations. As such, no litigable defense is apparent on the claims for which default judgment will be granted.

Finally, the third factor is either neutral or weighs in favor of default judgment. Conde was properly served on February 10, 2026, when a process server left a copy of the complaint and summons at Conde's home with his adult son. *See* ECF No. 11; Fed. R. Civ. P. 4(e)(2)(B) (allowing service to be effectuated by "leaving a copy of each at the individual's dwelling or

usual place of abode with someone of suitable age and discretion who resides there"). To date, Conde has failed to respond. Some courts have found such conduct to be culpable. *See Mission Critical Talent Partners, LLC*, 2026 U.S. Dist. LEXIS 43827, at *3 (concluding that where the plaintiff served the defendant "with the complaint through an individual designated by law to accept service of process on [its] behalf" and the defendant failed to respond or to offer any "explanation for its failure to respond," its conduct was "culpable"). However, other courts have concluded that when there is insufficient information explaining the defendant's failure to respond, the court could not determine whether this conduct is culpable. *See Acuity v. Pools by Snyder, LLC*, No. 5:20-cv-03888, 2021 U.S. Dist. LEXIS 109272, at *10 (E.D. Pa. June 10, 2021) ("When a court lacks information as to why a defendant has failed to respond, this factor is typically weighed neutrally").

In sum, the first and second *Chamberlain* factors are met and the third factor weighs in neither party's favor, which balances in favor of granting default judgment. However, to award relief the Court must continue its inquiry to determine whether Atlas Link has alleged a legitimate cause of action. *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008) ("Before awarding a default judgement, the Court must determine whether the moving party's complaint establishes a legitimate cause of action.").

**B. Sufficiency of Claims**

**a. Count I – Copyright Infringement**

Atlas Link has adequately satisfied the elements required to state a claim for copyright infringement. Atlas Link pleaded that it is the valid owner of South Korean copyright for its software applications, *see* Compl. ¶¶ 12, 15, which can be enforced by this Court via copyright treaty, *see Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 306-07 (2019)

("In 1988, Congress removed foreign works from § 411(a)'s dominion in order to comply with the Berne Convention for the Protection of Literary and Artistic Works' bar on copyright formalities for such works."); *Huishan Chen v. Adediy*, No. 2:24-cv-1516, 2025 U.S. Dist. LEXIS 77185, at *3 (W.D. Pa. Mar. 5, 2025) (explaining that the Berne Convention is the principal accord governing international copyright relations, pursuant to which "foreign copyright holders are afforded the same protection as domestic copyright holders — they are subject to the same United States copyright law analysis"). Additionally, Atlas Link has sufficiently alleged that Conde infringed on its copyright. *See* Compl. ¶¶ 19-31. Specifically, Conde has been "making unauthorized copies of the [Atlas Link] Copyrighted Works" and "has been offering for sale and selling pirated or 'cracked' unauthorized versions of [Atlas Link's] software." *Id.* ¶¶ 2, 19.[5]

**b. Counts II, IV, and V – Trademark Infringement**

Atlas Link has adequately satisfied the elements required to state a claim for trademark infringement. The first two elements are met because Atlas Link owned and registered its trademarks with the United States Patent and Trademark Office. Compl. ¶ 17 and Ex. 2. Additionally, Conde used Atlas Link's mark "by making unauthorized copies," "repackaging the software," and "selling pirated" versions using the "identical" Atlas Link mark. *Id.* ¶ 19. Finally, because Conde untruthfully held himself out as "distributing genuine [Atlas Link] software," Compl. ¶ 21, his conduct was "likely to cause confusion as to the . . . approval of goods or services." *Century 21 Real Estate Corp.* 425 F.3d at 221.

---

[5] The first sale doctrine does not bar the copyright infringement claim because Conde was not authorized to make copies of Atlas Link's software. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 535 (2013) (holding that "one who owns a copy will receive 'first sale' protection, provided, of course, that the copy was '*lawfully made*' and *not pirated*" (emphasis added)).

Although "[t]rademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the owner's consent," *Weil Ceramics & Glass, Inc.*, 878 F.2d at 671 (internal quotation marks omitted), "[w]hat trade mark law does protect is [a mark owner's] goodwill investment in its authorized dealer network," *Mavic, Inc. v. Sinclair Imps.*, No. 93-2444, 93-2448, 1994 U.S. Dist. LEXIS 202, at *15 (E.D. Pa. Jan. 12, 1994). "If non-authorized dealers either lead consumers to believe that they are authorized dealers or present themselves in such a manner so as to engender confusion among consumers on that point, [the trademark holder] may seek a judicial remedy against those retailers." *Id.* at *15-16. *See also Maya Swimwear, Corp. v. Maya Swimwear, LLC*, 789 F. Supp. 2d 506, 514 (D. Del. 2011) ("[T]he first sale doctrine does not protect resellers who use other entities' trademarks to give the impression that they are favored or authorized dealers for a product when in fact they are not.")). Accordingly, to the extent Counts II, IV, and V are based on trademark infringement and false association, Atlas Link has stated a claim.

However, to the extent the trademark infringement claims allege false designation of origin, *see* Compl. ¶ 52, they fail to state a claim for the reasons discussed below regarding Count III and are dismissed without prejudice.[6] *See Meenaxi Enter.*, 2024 U.S. App. LEXIS 18964, at *8 n.15 (finding that the designation of origin claims failed "because they require some degree of falsity in the product, which [the plaintiff had] not alleged").

**c. Count III – Trademark Counterfeiting**

"While the Lanham Act directly states that trademark infringement may occur where there is likely confusion as to, inter alia, sponsorship or approval of the goods, it provides no

---

[6] *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to . . . dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

such definition for counterfeiting claims." *Pa. State Univ. v. Vintage Brand, LLC*, 715 F. Supp. 3d 602, 652 (M.D. Pa. 2024) ("[T]he Lanham Act defines counterfeit as the spurious use of a mark, and spurious is best understood to mean something that is fake or deceptively suggesting an erroneous origin."). Congress's intent in enacting § 1114(1)(a) was "to provide a remedy only to the [] trademark holder who is injured by the distribution of *like* goods. . . . [It] does not reach the sale of genuine goods bearing a true mark even though such sale is without the owner's consent." *See Weil Ceramics & Glass, Inc.*, 878 F.2d at 671-72 (emphasis added, internal quotation marks omitted). "The test for whether an alleged infringer's products are genuine asks whether there are 'material differences' between the products sold by the trademark owner and those sold by the alleged infringer. If there are no material differences between the products sold, then the products offered by the alleged infringer are 'genuine' and an [counterfeiting] action under § 32 of the Lanham Act must fail." *Iberia Foods Corp.*, 150 F.3d at 302-03.

Atlas Link has not sufficiently stated a claim for trademark counterfeiting under 15 U.S.C. § 1114(1). Although there is one suggestion in the Complaint that Conde "modif[ied]" Atlas Link's software, *see* Compl. ¶ 20, there are no factual allegations as to how the software was modified. *See Iqbal*, 556 U.S. at 678 (holding that conclusory allegations do not suffice to state a claim). There are also no allegations that there are any differences between the products. Rather, the allegations are that Conde was "distributing unauthorized *copies* of [Atlas Link] software," *see id.* ¶¶ 19, 22 (emphasis added), which he represented to be "genuine [Atlas Link] software, *id.* ¶ 21, but did not have Atlas Link's permission to do so. This conduct does not state a claim for trademark counterfeiting. *See Weil Ceramics & Glass, Inc.*, 878 F.2d at 671-72 (3d Cir. 1989) (finding that 15 U.S.C. § 1114(1)(a) did not apply to the defendant who imported and sold trademarked porcelain without the consent of the trademark owner).

Additionally, Atlas Link fails to show that Conde's offering was likely to cause consumer confusion. *See Meenaxi Enter.*, 2024 U.S. App. LEXIS 18964, at *7-8 (concluding that because the plaintiff "failed to adequately allege that the infringing goods are not genuine or otherwise inferior, the only plausible source of consumer confusion would be if consumers do not realize that they are buying 'genuine' goods diverted from a foreign market to the United States without [the plaintiff's] permission").

Count III is dismissed without prejudice.[7]

## V. CONCLUSION

Atlas Link is entitled to default judgment as to copyright infringement in Count I and as to the trademark infringement/false association claims in Counts II, IV, and V. Default judgment is denied as to the false designation of origin claims in Counts II, IV, and V, as well as the trademark counterfeiting claim in Count III. These claims are dismissed without prejudice for failure to state a claim. Atlas Link will be afforded an opportunity to file an amended complaint before this Court considers the request for damages because the statutory damages Atlas Link seeks are only available under one of the dismissed counts (Count III- trademark counterfeiting).

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_________
JOSEPH F. LEESON, JR.
United States District Judge

---

[7] *See Alston*, 363 F.3d at 235. Atlas Link is advised that if it elects not to amend Count III, it will need to file an amended motion for default judgment because the statutory damages requested in the instant motion are only available for a trademark counterfeiting claim.