UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATLAS LINK INC., Plaintiff, | : | |
| v. | : | No. 5:26-cv-0703 |
| ANGEL CONDE, Defendant. | : | |

**OPINION**

**Amended Motion for Default Judgment, ECF No. 32 – Granted in Part**

**Joseph F. Leeson, Jr.**
**United States District Judge**

**October 29, 2026**

## I. INTRODUCTION

This case involves claims of copyright infringement and of trademark infringement and counterfeiting brought by a South Korean company that sells electronic devices that operate with a corresponding mobile application. Plaintiff Atlas Link, Inc.[1] filed the above-captioned action against Defendant Angel Conde. Conde failed to respond and default was entered against him. Atlas Link filed a Motion for Default Judgment, which was granted in part and denied in part without prejudice. Atlas Link was afforded an opportunity to file an amended complaint and to renew its motion for default judgment, which it has done. For the reasons set forth below, Atlas Link's Amended Motion for Default Judgment is granted in part.

## II. BACKGROUND

### A. Procedural History

On February 3, 2026, Atlas Link initiated the above-captioned action by filing a

[1] At the time the action was initiated, the Plaintiff was Aloys. Inc., but the company has since changed its name to Atlas Link, Inc. *See* ECF Nos. 21-22.

Complaint against Conde alleging violations of: (I) copyright infringement, 17 U.S.C. § 501, (II) trademark infringement, 15 U.S.C. § 1114, (III) trademark counterfeiting, 15 U.S.C. § 1114(1), (IV) trademark infringement, false designation of origin, and unfair competition, 15 U.S.C. § 1125(a), and (V) trademark infringement under Pennsylvania Common Law. *See* ECF No. 1. Despite proper service of the Complaint, Conde failed to respond and default was entered against him. *See* ECF Nos. 14-15. On May 4, 2026, Atlas Link filed a Motion for Default Judgment. *See* ECF No. 18. The Motion was granted in part and denied in part by Opinion and Order dated August 24, 2026. *See* ECF Nos. 23-24. This Court granted default judgment on Count I and the trademark infringement/false association claims in Counts II, IV, and V, but denied default judgment on the false designation of origin claims in Counts II, IV, and V, and on the trademark counterfeiting claim in Count III. *See id.* The later claims were dismissed without prejudice for failure to state a claim. *See id.*

On September 29, 2026, Atlas Link filed an Amended Complaint reasserting all claims. *See* Am. Compl., ECF No. 30. Because the Amended Complaint did not raise any new claims, the Clerk's entry of default against Conde on March 23, 2026, *see* ECF No. 15, remains in effect, *see* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."). Also on September 29, 2026, Atlas Link filed an Amended Motion for Default Judgment, *see* Am. Mot., ECF No. 32, which is the subject of this Opinion. To date, Conde has still not responded.

**B. Factual Allegations**

Atlas Link sells "multimedia devises such as satellite and media receivers" worldwide. *See* Am. Compl. ¶ 10. The devices are used with the corresponding mobile applications titled

"MYTVOnline+" and "MYTVOnline3." *Id.* "These applications are available for download through the Apple or Android store and are used exclusively with the streaming device that Atlas Link offers." *Id.* ¶ 13. "Atlas Link has made significant investments in its devices and in creating and developing unique software applications that run with those devices." *Id.* ¶ 14. "Atlas Link's software is protected by copyright under South Korean Law." *Id.* at ¶¶ 13-15. Additionally, Atlas Link has registered the trademarks that it uses in connection with the copyrighted works and "many of these trademarks are duly and properly registered . . . with the United States Patent and Trademark Office on the Principal Register." *Id.* ¶ 17 (specifying six recorded trademarks).

Atlas Link alleges that Conde profited "by making unauthorized copies" of Atlas Link's copyrighted material, "repackaging the software and selling it using identical MYTVONLINE marks." *Id.* ¶ 19. Conde allegedly benefited "by copying and modifying software." *Id.* ¶ 20. Additionally, Conde "advertises, markets, copies, offers, and/or distributes purported [Atlas Link] software and components on online forums." *Id.* ¶ 21. On those forums, Conde "holds himself out as distributing genuine Atlas Link software;" however, the Atlas Link software distributed by Conde is "unauthorized and infringing." *Id.* "There are material differences between the authorized software sold by Atlas Link and the unauthorized software sold by [Conde] that make [Conde's] products inferior." *Id.* ¶ 22. "Unlike Atlas Link's authorized software, [Conde's] application does not receive developer updates[, and a]s a result, users of [Conde's] application are vulnerable to malfunctioning or outdated software that does not operate at full capacity." *Id.* ¶ 23. Conde's "application is not subject to the quality control measures that Atlas Link implements for its software," which further introduces security vulnerabilities placing users at risk. *Id.* ¶ 25. Also, users of Conde's software "do not have

access to the official support services that Atlas Link provides to users of its authentic software." *Id.* ¶ 24.[2] Atlas Link sent two cease-and-desist letters to Conde requesting that he stop infringing on Atlas Link's copyrights and trademarks. *Id.* ¶¶ 26, 29. Nevertheless, Atlas Link believes that Conde may still be engaging in the infringing conduct. *Id.* ¶¶ 31-32. Atlas Link suggests that it has been harmed by Conde's activities, specifically its "hard-earned reputation[ and] goodwill in its trademarks," and that consumers are "confused and harmed by Conde's actions." *Id.* ¶¶ 34-35

## III. LEGAL STANDARDS

### A. Default Judgment – Review of Applicable Law

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a properly served defendant when a default has been entered by the Clerk of Court. *See* Fed. R. Civ. P. 55(b)(2); *see also Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The Court considers three factors in determining whether to enter default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In considering these factors, the "court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions[,]" *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017), nor those related to damages, *see DirecTV Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005).

---

[2] The allegations in paragraphs 22 through 25 are new to the Amended Complaint. *See also* Am. Compl. ¶ 51.

Because "a party in default does not admit mere conclusions of law[,]" the district court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action," before granting default judgment. *Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD*, 555 F. Supp. 2d 537, 541 (E.D. Pa. May 21, 2008) (citation omitted). In determining whether the plaintiff has stated a cause of action, the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

**B. Trademark Counterfeiting – Review of Applicable Law**

Section 1114 of the Lanham Act "requires the plaintiff to show that the defendant (1) used a 'reproduction, counterfeit, copy, or colorable imitation' of a registered mark or its packaging. . . ; and (2) that its use is 'likely to cause confusion, or to cause mistake, or to deceive'." *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659, 671 (3d Cir. 1989) (quoting 15 U.S.C. § 1114(1)). "The terms 'copy,' 'simulate,' 'counterfeit' and 'imitate' have readily comprehensible ordinary meanings. They are used commonly to refer to items that resemble, but

are not themselves, the original or genuine artifacts." *Id.* "[T]he Lanham Act defines counterfeit as the spurious use of a mark, and spurious is best understood to mean something that is fake or deceptively suggesting an erroneous origin." *Pa. State Univ. v. Vintage Brand, LLC*, 715 F. Supp. 3d 602, 652 (M.D. Pa. 2024). Congress's intent in enacting § 1114(1)(a) was "to provide a remedy only to the [] trademark holder who is injured by the distribution of *like* goods." *See Weil Ceramics & Glass, Inc.*, 878 F.2d at 671-72 (emphasis added, internal quotation marks omitted). Under the first requirement, the trademark owner "must establish that the products sold by the alleged infringer are not 'genuine.'" *Id.* at 671 (quoting *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998). "The test for whether an alleged infringer's products are genuine asks whether there are 'material differences' between the products sold by the trademark owner and those sold by the alleged infringer. If there are no material differences between the products sold, then the products offered by the alleged infringer are 'genuine' and an [counterfeiting] action under § 32 of the Lanham Act must fail." *Iberia Foods Corp.*, 150 F.3d at 302-03.

### C. Permanent Injunction – Review of Applicable Law

"In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." *Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998) (citations omitted). "A basic purpose

behind the balancing analysis is to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990). "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Id.*

**D. Statutory Damages, Trademark Counterfeiting – Review of Applicable Law**

Section 117(c) of the Lanham Act provides for statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of good or services sold, offered for sale, or distributed, as the court considers just; or if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods . . . ." 15 U.S.C. § 1117(c)(1)-(2). "[S]tatutory damages are limited to counterfeiting cases." *Laughing Smith, LLC v. PPNC, Inc.*, No. 1:23-CV-01285, 2024 U.S. Dist. LEXIS 169831, at *9 (M.D. Pa. Sep. 20, 2024) (denying the request for statutory damages because the plaintiff cited "no authority to support the awarding of statutory damages for ordinary trademark infringement under Sections 1117(b), (c), or any other provision"). "Courts have wide discretion in determining statutory damages." *Broadcast Music, Inc. v. Crocodile Rock Corp.,* 634 F. App'x 884, 885 (3d Cir. 2015). "In determining the appropriate amount of statutory damages, the Court considers the following factors: (1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental." *Globe Turner, LLC v. ConversationPrints, LLC*, No. 24-6673, 2025 U.S. Dist. LEXIS 156162, at *21-22 (E.D. Pa. Aug. 13, 2025). The Court may also consider: (1) the need to "compensate the plaintiff for lost sales and the cost of enforcing its copyright," (2) the need to

"deter the defendant and other possible infringers from future infringement," and (3) "the defendant's state of mind." *U2 Home Entm't v. Kim*, No. 98-CV-4159, 1998 U.S. Dist. LEXIS 17683, at *9 (E.D. Pa. Nov. 3, 1998). *See also Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-02662, 2009 WL 2147843, at *7 (D.N.J. July 15, 2009) (listing seven factors for consideration: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant).

**E. Attorney's Fees and Costs – Review of Applicable Law**

The Lanham Act allows the plaintiff to recover "the costs of the action." *See* 15 U.S.C. § 1117(a). Additionally, the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). *See also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (A "district court may find a case exceptional, and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an unreasonable manner." (citing *Octane Fitness, LLC*, 572 U.S. at 554)). "There is no precise rule or formula for making these determinations, and courts should consider[] the totality of the circumstances." *Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 157 (3d Cir. 2024) (citing *Octane Fitness, LLC*, 572 U.S. at 554) (cleaned up). "The losing party's

blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case, but [the Supreme Court] has eliminated" the requirement that the defendant engaged in culpable conduct. *See Fair Wind Sailing, Inc.*, 764 F.3d at 315 (citing *Octane Fitness, LLC*, 572 U.S. at 554). "Factors informing [the court's] determination include 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Decus, Inc. v. Heenan*, No. 16-5849, 2018 U.S. Dist. LEXIS 31184, at *4 (E.D. Pa. Feb. 27, 2018) (citing *Octane Fitness, LLC*, 572 U.S. at 554 n.6).

## IV. ANALYSIS

### A. Default Judgment is granted on all counts of the Amended Complaint.

This Court's discussion of the *Chamberlain* factors in the Opinion dated August 24, 2026, is equally applicable here and is incorporated herein. *See* ECF No. 23. In sum, this Court finds that the *Chamberlain* factors weigh in favor of granting default judgment. Accordingly, this Court considers whether Atlas Link has stated a trademark counterfeiting claim in Count III.[3] *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008) ("Before awarding a default judgement, the Court must determine whether the moving party's complaint establishes a legitimate cause of action.").

This Court finds that the Amended Complaint has stated a claim for trademark counterfeiting. As to the first element, the Atlas Link products sold by Conde were not genuine

---

[3] For the reasons set forth in the Opinion dated August 24, 2026, *see* ECF No. 23, and after review of the Amended Complaint, this Court concludes that Atlas Link has stated a legitimate cause of action for copyright infringement in Count I and for trademark infringement/false association in Counts II, IV, and V. Because Atlas Link stated a trademark infringement/false association in Counts II, IV, and V, there is no need to consider whether it also stated a false designation of origin claim in Counts II, IV, and V.

(having material differences) because the software was not updated, making it vulnerable to malfunctioning and inferior in quality, and because Conde's purchasers do not have access to Atlas Link's support services. *See Spectrum Brands v. Arrow Merchs. LLC*, No. 22-992, 2023 U.S. Dist. LEXIS 21792, at *9 (D.N.J. Feb. 7, 2023) ("[C]ourts have found that material differences can include, for example, differences in quality control, warranties, conditions of products or packaging, and quality of customer service."); *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-05246, 2019 U.S. Dist. LEXIS 222361, at *4, 23-26 (D.N.J. Dec. 30, 2019) (denying summary judgment on the trademark counterfeiting claim because the goods sold by the defendant did not have the plaintiff's "warranty, quality control and customer support and [were] therefore materially different" from the plaintiff's goods). Second, Conde's actions were likely to cause confusion because he held himself out "as distributing genuine Atlas Link software" and the lack of updates, warranty, and support services would not be apparent to the consumer. *See Meenaxi Enter. v. Singh Trading Co.*, No. 23-2288, 2024 U.S. App. LEXIS 18964, at *7-8 (3d Cir. July 31, 2024) (explaining that consumers might be confused if they did not realize that they were buying "'genuine' goods diverted from a foreign market to the United States without [the plaintiff's] permission"). Because a confused consumer might think that Atlas Link's outdated and vulnerable software was inferior, Atlas Link has been harmed by Conde's unauthorized sales. *See Spectrum Brands*, 2023 U.S. Dist. LEXIS 21792, at *11 (finding that "material differences in Defendant's quality control, customer service, and warranty inclusion threaten to damage Plaintiff's goodwill with its customers"). Accordingly, default judgment is also granted on Count IV.

### B. Atlas Link's request for a permanent injunction, statutory damages, and attorneys' fees is granted in part.

#### *1. Permanent Injunctive Relief*

"[T]he Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (quoting 17 U.S.C. § 502(a)). Although a "permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement," *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996); *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 689 (D.N.J. 2015),[4] the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed," *eBay Inc.*, 547 U.S. at 392.

As to the first equitable consideration, Atlas Link has shown actual success on the merits. Second, "when a plaintiff in a Lanham Act case has proven trademark infringement, it 'shall be entitled to a rebuttable presumption of irreparable harm.'" *Mission Critical Partners, LLC v. Mission Critical Talent Partners, LLC*, No. 4:25-CV-00961, 2026 U.S. Dist. LEXIS 43827, at *14 (M.D. Pa. Mar. 4, 2026) (citing 15 U.S.C. § 1116(a)). The rebuttable presumption applies here and has not been rebutted as Conde has not responded to this litigation. Moreover, Conde's sale of inferior software under the guise of being "genuine" Atlas Link software is confusing to consumers and will damage the goodwill and reputation Atlas Link has built over the last several years if allowed to continue. *See Pappan Enters.*, 143 F.3d at 805 ("This court has held that once the likelihood of confusion caused by trademark infringement has been established, the

---

[4] Because there are two cases with Chanel, Inc. as the plaintiffs cited herein, this Court will refer to this case by the defendant's name (Matos) to avoid confusion.

inescapable conclusion is that there was also irreparable injury."). The second equitable consideration is therefore satisfied. *See Matos*, 133 F. Supp. 3d at 689 ("With respect to the second requirement, although a remedy at law would provide some degree of monetary relief, it would not adequately compensate Plaintiff for the reputational and goodwill injury associated with the distribution of low-quality counterfeit goods, nor would it necessarily prevent, or even impede, future trademark infringement.").

The third equitable consideration is also met. The injunction sought here simply prevents Conde from infringing on Atlas Link's trademarks and copyrights, which Conde has no legal right to do. *See Opticians*, 920 F.2d at 197 (stating that "[b]y virtue of this recalcitrant behavior, the [defendant] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself"). On the other hand, Atlas Link faces loss of reputation, goodwill, and future sales if Conde is not enjoined from selling inferior products under Atlas Link's protected marks. *See Matos*, 133 F. Supp. 3d at 689 (concluding that "balancing of hardships strongly favors issuance of an injunction" as "the injunction sought only requires Defendant to abide by the law and to refrain from infringing the federally protected [marls of Plaintiff], whereas in the absence of an injunction, Plaintiff faces the hardships that gave rise to this litigation: loss of reputation, goodwill, and sales").

Finally, a permanent injunction would serve the public interest. The "most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004). "Having already established that there is a likelihood of consumer confusion created by the concurrent use of the [Atlas Link] marks, it follows that if such use

continues, the public interest would be damaged. Conversely, a prohibition upon [Conde's] use of the marks would eliminate that confusion." *Opticians*, 920 F.2d at 198.

Atlas Link's request for a permanent injunction is granted.

### *2. Statutory Damages*

Atlas Link seeks statutory damages of $2,000,000 based on Conde's alleged willful misconduct. *See* Am. Mot. 20-21. Atlas Link argues that because Conde failed to appear, it does not have access to information about Conde's profits associated with the sale of the pirated software,[5] making "an award of statutory damages [] particularly appropriate given Atlas Link cannot properly establish its actual damages." *Id.* (citing *Hayward Indus. v. Saltwater Pool Supplies*, No. 20-6105, 2021 U.S. Dist. LEXIS 92209, at *32 (D.N.J. May 14, 2021) (concluding that statutory damages under the Lanham Act are "particularly appropriate where, as here, the defendant's failure to respond has made it difficult or impossible for the plaintiff to demonstrate its actual damages")). Atlas Link asserts that Conde, who held himself out as selling genuine Atlas Link software but "was operating with full knowledge of Atlas Link's intellectual property rights," acted willfully. *See* Am. Mot. 20-21 (citing *Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888, 2012 U.S. Dist. LEXIS 7429, at *7 (D.N.J. Jan. 20, 2012) ("The Third Circuit has stated that 'willful' infringement 'involves an intent to infringe or a deliberate disregard of a mark holder's rights'" (quoting *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999))). Atlas Link argues that Conde, "apparently keen to continue his infringing

---

[5] Aside from willfulness, Atlas Link does not specially address any of the other relevant factors. *Accord Universal City Studios, Inc. v. Ahmed*, No. 93-3266, 1994 U.S. Dist. LEXIS 6251, at *9 (E.D. Pa. May 13, 1994) ("Because the defendants did not answer the plaintiffs' complaint, let alone participate in discovery, it is hardly surprising that the plaintiffs have been unable to provide evidence as to the defendants' profits, the defendants' costs avoided, or the plaintiffs' lost profits as a result of the infringements.").

activities, lied to Atlas Link by claiming that he never sold or distributed pirated versions of the Atlas Link software, when Atlas Link's investigation had already confirmed that he had done so." *See* Am. Mot. 20-21 (citing Am. Compl. ¶¶ 26-28). Additionally, Atlas Link suspects Conde may be continuing his infringing behavior despite receipt of Atlas Link's cease-and-desist letters. *See id.*; Am. Compl. ¶¶ 26, 29-31.

This Court finds that Conde's actions were willful because he held himself out as selling "genuine" Atlas Link software but knew he was not authorized to sell the same, which was a calculated attempt to benefit from the goodwill and reputation Atlas Link built. *See SecuraComm Consulting Inc.*, 166 F.3d at 187 (adopting the Second Circuit's description of "willful infringement as involving 'an aura of indifference to plaintiff's rights' or a 'deliberate[] and unnecessary duplicating [of a] plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured'" (quoting *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)). Willfulness is the most important factor in assessing statutory damages. *See Universal City Studios, Inc.*, 1994 U.S. Dist. LEXIS 6251, at *9 (stating that "the most important factor is the defendant's scienter" in assessing statutory damages for copyright infringement). Additionally, "the point of sale is very relevant to the statutory damages discussion. This case represents the new era of counterfeiting. No longer are these cases limited to the street vendor. Now, counterfeiters have the internet as their arsenal." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002). Because Conde's unauthorized sales were solely online and his failure to appear has prevented discovery, this Court presumes his profits were high. *See id.* ("While the record contains no evidence of the actual scope of the defendants' sales, nor the number of hits the internet site received, given the scope of the internet supermarket, such sale offerings are

presumptively quite high and proscribed by the Lanham Act."). The relative ease of online sales emphasizes the need to deter both Conde and others in future infringement. Finally, for the reasons discussed in the last section, the need to compensate Atlas Link and the strong public interest in insuring the integrity of the copyright laws also support the award of statutory damages. For all these reasons, an award above the statutory minimum is appropriate.[6]

Although Atlas Link demands $2,000,000 in statutory damages because Conde's actions were willful, only one of the cases it cites awarded that amount. *See Hayward Indus.*, 2021 U.S. Dist. LEXIS 92209, at *34 (awarding $2,000,000 in statutory damages based on the defendant's counterfeiting of eight trademarks). That case is distinguishable because that defendant "continue[d] to sell counterfeit and infringing [products] while ignoring plaintiff's cease-and-desist letters and filings." *See id.* at *35. Although Atlas Link argues that Conde *may* still be engaging in the infringing behavior despite cease-and-desist letters, its allegations are mere speculation.[7] *See Bowen v. Wetzel*, No. 3:20-cv-220, 2022 U.S. Dist. LEXIS 81453, at *9 (W.D. Pa. May 3, 2022) ("Pleading 'on information and belief' is not a substitute for alleging 'a good-faith basis in fact.'"). Such speculation is insufficient to establish that Conde has engaged in the

---

[6] *Accord Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987) (finding that because the defendant's infringement was not willful; rather, he was "entirely unfamiliar with the nuances of the Copyright Act," and "the plaintiff suffered little or no harm as a result of this defendant's conduct," "the defendant should not be assessed damages in excess of the statutory minimum).

[7] *See* Am. Compl. ¶ 31 ("Upon information and belief, Conde *may* still be engaging in the infringing actions." (emphasis added)); Am. Compl. ¶ 32 ("On Information and belief, Defendant has committed and *may* be continuing to commit acts of copyright and trademark infringement against Atlas Link." (emphasis added)); Am. Mot. 21 ("Atlas Link is *concerned* that Defendant continues engaging in the infringing actions." (emphasis added)); Am. Mot. 22 ("Defendant acted unreasonably by failing to appear, failing to stop selling the unauthorized software and *possibly* by continuing to engage in this unauthorized conduct, despite being on notice." (emphasis added).

"more blameworthy"[8] behavior afoot in *Hayward*. *See Daimler v. Moehle*, No. 18-165, 2023 U.S. Dist. LEXIS 133766, at *5 (W.D. Pa. Aug. 2, 2023) (explaining that Lanham Act damages may not be determined "by speculation or conjecture"). Moreover, the other cases cited by Atlas Link, even one in which the defendant continued the infringing action after receipt of cease-and-desist letters, awarded far less damages. *See Columbia Pictures Indus., Inc. v. Sandrow*, No. 87-3279, 1988 U.S. Dist. LEXIS 2311 (E.D. Pa. Mar. 23, 1988) (awarding $450,000 in statutory damages); *Coach, Inc.*, 2012 U.S. Dist. LEXIS 7429, at *20-21 (awarding $30,000 per infringement for a total of $450,000 in statutory damages). Furthermore, "[i]n other cases where district courts have awarded the maximum penalty permitted under the statute, there was reason to believe that the defendant's sales were substantial." *Pa. State Univ. v. Parshall*, No. 4:19-CV-01299, 2022 U.S. Dist. LEXIS 28678, at *79 (M.D. Pa. Feb. 17, 2022) (internal quotations omitted) ("Conversely, such a large award is less appropriate where there is limited evidence of large-scale operations or profits."). There is no evidence here Conde's sales were substantial.

"In assessing the propriety of a requested award, the Court may be guided by past statutory awards." *Matos,* 133 F. Supp. 3d at 683. This Court finds that an award of $30,000 per infringement is a reasonable award and consistent with other awards. *See Juul Labs, Inc. v. Zoey Trading LLC*, No. 21-19299, 2022 U.S. Dist. LEXIS 59803, at *18 (D.N.J. Mar. 31, 2022) (awarding $30,000 for each of the three marks and finding "that a $90,000 award is in line with other awards in other actions and will serve the goals of compensating Plaintiff, punishing Defendant, and deterring others from similar misconduct"); *Matos,* 133 F. Supp. 3d at 688 (awarding $30,000 per infringement, thirty times the minimum statutory damage, for a total of

---

8 *See Columbia Pictures Industries Inc.*, 1988 U.S. Dist. LEXIS 2311, at *11-12 (determining that the defendant's six instances of copyright infringement were "more blameworthy" after receipt of the cease-and-desist letters).

$180,000 based on six infringements); *Coach, Inc.*, 2012 U.S. Dist. LEXIS 7429, at *20-21 (awarding $30,000 for each of the fifteen infringements, thirty times the minimum statutory damages).[9] *But see U2 Home Entm't*, 1998 U.S. Dist. LEXIS 17683, at *9 (awarding $500 per infringement (for a total of $109,000) and finding that amount will serve the interests of justice, deter the defendant from further infringement, and compensate the plaintiff for lost sales); *Columbia Pictures Indus., Inc*, 1988 U.S. Dist. LEXIS 2311, at *11-12 (awarding $250 for each of the two infringing acts before the cease and desist letters and $300 for the six infringements after because the infringement was then deemed willful).[10]

Atlas Link failed to plead the number of infringing acts or by how many marks; however, it did plead that Conde was using its protected marks on its "software and components on online forums." *See* Am. Compl. ¶ 21. Additionally, Atlas Link pleaded six trademarks that are protected by the U.S. Patent and Trademark office. *See id.* at ¶ 17. Accordingly, damages will be awarded at $30,000 per protected mark for a total of $180,000 in statutory damages.

***3. Attorneys' Fees and Costs***

Atlas Link argues that this case is exceptional, which entitles him to attorneys' fees under § 1117(a) of the Lanham Act, because Conde willfully sold counterfeit products bearing the protected marks of Atlas Link, lied about the same upon receiving the first cease-and-desist letter, and litigated this case in an unreasonable manner by failing to appear and failing to stop

---

[9] In each of these cases, the defendant engaged in willful infringement.

[10] In 2008, the Lanham Act was amended to double the amount of statutory damages recoverable. *See* 15 U.S.C. § 1117 (Amendments in 2008 substituted "$1,000" for "$500", substituted "$200,000" for "$100,000", and substituted "$2,000,000" for "$1,000,000"). To be consistent and because the Eastern District cases cited here were decided before the amendment, this Court will consider the awards in these cases as if they were double. Regardless, because of the age of the Eastern District cases compared to the District of New Jersey cases, this Court finds the Eastern District cases less persuasive in determining the amount of the award.

the infringing conduct. *See* Am. Mot. 21-22 (citing *Gordashevsky*, 2007 WL 316433, at *5 n.4; *N.V.E., Inc. v. Day*, 2009 WL 2526744, at *3 (D.N.J. Aug. 18, 2009); *Cosmetic Warriors Ltd. v. Nailush LLC*, 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017)).

Initially, the Court notes that the cases Atlas Link relies upon are distinguishable. *Gordashevsky* addressed attorney's fees under under § 1117(b) of the Lanham Act, which is not applicable here. *See New Balance Ath., Inc. v. USA New Bunren Int'l Co. LLC*, No. 17-1700, 2020 U.S. Dist. LEXIS 170906, at *9 (D. Del. Sep. 18, 2020) (declining to award attorney's fees under § 1117(b) because "the plain language of the statute suggests that attorneys' fees are not available unless [the plaintiff] is seeking actual damages, which it is not"). *N.V.E., Inc.* was decided before the Supreme Court's opinion in *Octane Fitness*, which changed the law regarding whether a case is exceptional. *See Fair Wind Sailing, Inc.*, 764 F.3d at 315. Additionally, to the extent *N.V.E., Inc.* determined that "[w]illful and deliberate trademark infringement constitutes an exceptional case for purposes of attorneys' fees," 2009 U.S. Dist. LEXIS 72934, at *14, it is no longer good law, *see The Hershey Co. v. Anykiss*, No. 1:18-cv-00843, 2019 U.S. Dist. LEXIS 191101, at *17 (M.D. Pa. Nov. 4, 2019) ("Willful infringement on the part of a party, however, does not automatically render a case exceptional." (citing *Luxottica Grp., S.p.A. v. Shore Enuff*, No. 16-5847, 2019 U.S. Dist. LEXIS 145357, at *23 (D.N.J. Aug. 27, 2019))). *Cosmetic Warriors, Inc.* held that the defendant "litigated this case in an unreasonable manner because it *both* failed to litigate and *acted culpably by continuing its infringement* of [the plaintiff's] trademark long after it had knowledge that its mark was confusingly similar." *See* 2017 U.S. Dist. LEXIS 183886, at *16 (emphasis added). For the reasons discussed above; however, Atlas

Link's allegations that Conde "possibly [continues] to engage in this unauthorized conduct," *see* Am. Mot. 22,[11] are nothing more than mere speculation and evidence of nothing.

In the absence of evidence of ongoing infringement or counterfeiting by Conde after receipt of the cease-and desist letters or the initiation of the above-captioned action, this Court finds that the instant action is not exceptional. *See Kinsley Enters., Inc. v. Kinsley Roofing, LLC*, No. 1:24-CV-00810, 2025 U.S. Dist. LEXIS 150796, at *17-18 (M.D. Pa. Aug. 6, 2025) (denying attorney's fees against the defaulted Defendants because their willful adoption of the Plaintiffs' "trademarks to deceive the public and capitalize on Plaintiffs' goodwill does not automatically render this case exceptional in the absence of further proof of Defendants' continued infringement" (quotations omitted)); *Luxottica Grp., S.p.A.*, 2019 U.S. Dist. LEXIS 145357, at *22-23 (finding no evidence that the defaulting defendants continued to infringe after having been served with the complaint and insufficient evidence of exceptional circumstances to award attorney's fees). "Willful infringement on the part of a party, [] does not automatically render a case exceptional." *The Hershey Co.*, 2019 U.S. Dist. LEXIS 191101, at *17 (citing *Luxottica Grp., S.p.A.*, 2019 U.S. Dist. LEXIS 145357, at *23). *See also Kinsley Enters., Inc.*, 2025 U.S. Dist. LEXIS 150796, at *17-18 ("Plaintiffs' argument that Defendants willfully adopted Plaintiffs' trademarks to deceive the public and capitalize on Plaintiffs' goodwill, does not automatically render this case exceptional in the absence of further proof of Defendants' continued infringement." (internal quotations omitted)). Further, Conde's failure to appear does not equate with unreasonable litigation. *See Meenaxi Enter. v. Singh Trading Co.*, No. 23-906, 2025 U.S. Dist. LEXIS 143573, at *27-28 (D.N.J. July 28, 2025) (denying attorney's fees under the Lanham Act because failing to appear in the action, alone, does not warrant a finding that the

[11] *See also* Footnote 7 *supra*

defendant litigated the case in an unreasonable manner); *Luxottica Grp., S.p.A.*, 2019 U.S. Dist. LEXIS 145357, at *22-23 (finding that "the singular behavior signaling defendants' culpability is that they did not participate in litigating this case even though they had timely submitted their answers, which . . . is insufficient to indicate that 'exceptional' circumstances" and denying the plaintiff's recovery of attorneys' fees). To the contrary, "a defendant who never responds to a complaint does . . . not litigate the case at all." *Mission Critical Partners, LLC*, 2026 U.S. Dist. LEXIS 43827, at *11-14 (quotations omitted). The courts have refused to "entertain a brightline rule where the failure to respond to a complaint necessarily means that a case was litigated in an unreasonable manner [because t]o apply such a rule would run contrary to the Supreme Court's admonition that questions of exceptionality 'must be determined by district courts in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Id.* (quoting *Octane Fitness, LLC*, 572 U.S. at 555).

Accordingly, in the absence of exceptional circumstances, the request for attorney's fees is denied. However, costs are awarded in the amount of $405 for the filing fee. *See Luxottica Grp., S.p.A.*, 2019 U.S. Dist. LEXIS 145357, at *22-23 (denying attorney's fees because the case was not exceptional but granting the plaintiff's recovery of the filing fee under 15 U.S.C. § 1117(a)(3).

## V. CONCLUSION

Atlas Link is entitled to default judgment as to copyright infringement in Count I, trademark counterfeiting in Count III, and trademark infringement/false association in Counts II,

IV, and V.[12] Statutory damages in the total amount of $180,000 are awarded, plus $405 in costs. Additionally, the request for a permanent injunction is granted.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

[12] Because Atlas Link states a trademark infringement claim in Counts II, IV, and V, there is no need to consider whether it also states a false designation of origin claim in these counts.